

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
DEC - 3 2013
DEC 3 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 11CR153 |
| vs. ) | |
| ) | Judge John W. Darrah |
| VINCENT LANGMAN ) | |

## PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant VINCENT LANGMAN, and his attorney, STEVEN GREENBERG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.  The superseding indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts One through Three).

3.  Defendant has read the charges against him contained in the superseding indictment, and the charges have been fully explained to him by his attorney.

4.  Defendant fully understands the nature and elements of the crimes with which he has been charged.

1

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts Two and Three of the superseding indictment, which charge defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Two and Three of the superseding indictment. In pleading guilty, defendant admits the following facts, and that those facts establish his guilt beyond a reasonable doubt:

Defendant VINCENT LANGMAN operated and controlled Fairway Financial Services, Inc., and Jamorg, Inc. LANGMAN also controlled bank accounts in the name of Fairway Financial and Jamorg at Valley Community Bank.

Home 123 Corporation and Sebring Capital Partners were lenders which made loans secured by mortgages. These lenders required applicants for mortgage loans to provide truthful information, including the borrower's employment, income, financial condition, age, assets, liabilities, contribution to the purchase price, intention to occupy the property purchased, and the

2

sales price of the property, which was material to the lenders' approval, terms and funding of the loans.

Beginning in or about June of 2005, and continuing until in or about October 30, 2006, in the Northern District of Illinois, Eastern Division, LANGMAN along with others, devised and participated in a scheme to defraud lenders, and to obtain money and property from lenders by means of materially false and fraudulent pretenses, representations, and promises, and material omissions.

LANGMAN fraudulently obtained multiple mortgage loans from lenders by making materially false representations and omissions in loan applications, including false statements and omissions concerning the borrowers' employment, income, financial condition, assets, liabilities, contribution to the purchase price, intention to occupy the property purchased, and the sales price of the property, and for the purpose of executing the scheme caused interstate wire transmissions.

LANGMAN recruited individuals with good credit to be nominee buyers of properties, including an individual to be the nominee buyer of 2121 Sunset Ridge, Glenview, Illinois, and 2493 Bird Lane, Batavia, Illinois. LANGMAN promised the nominee buyer that she would not have to invest any of her own money, that she would be paid for allowing her name to be used to apply for

loans to purchase the properties, and that the properties would be sold, and title taken out of her name after a short time. LANGMAN paid the nominee buyer money for purchasing the properties. LANGMAN recruited the nominee buyer to purchase the properties knowing that the transactions would be financed by making material false statements, and omitting material information to lenders to obtain mortgage loans in the name of the nominee buyer.

LANGMAN caused to be prepared and submitted to lenders applications falsely representing that the nominee buyer intended to occupy the properties to be purchased, or purchased the properties as an investment, knowing that the buyer purchased the properties as a nominee, and had no intention to occupy the properties or pay the mortgage loan.

LANGMAN caused to be prepared and submitted to lenders applications falsely representing the nominee buyer's contribution to the purchase price, knowing that the down payment would not be the nominee buyer's funds.

LANGMAN caused to be prepared and submitted to lenders applications falsely representing: that the nominee buyer owned certain assets valued at $500,000; that the buyer held other financial accounts including IRA accounts of more than $177,000, and approximately $300,000 in "Jamorg Investments;" and that the buyer's income was approximately 10 times greater than it

actually was. Defendant knew that these statements regarding the financial wherewithal of the borrower were fictitious.

LANGMAN received more than $300,000 in proceeds of the fraudulently obtained mortgage loans, in part, by causing payouts to be made at the loan closings to Jamorg, a company he owned and controlled.

LANGMAN caused lenders to incur losses of more than $2 million.

LANGMAN misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purpose of those acts.

As charged in Count Two of the superseding indictment, on September 28, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, defendant VINCENT LANGMAN, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce through the Federal Reserve system, certain signs, signals and sounds, namely, a wire transfer of approximately $168,000, which funds were the proceeds of a mortgage loan made by Home 123 Corporation for the purchase of 2121 Sunset Ridge, Glenview, Illinois.

As charged in Count Three of the superseding indictment, on October 30, 2006, at Chicago, in the Northern District of Illinois, Eastern Division,

defendant VINCENT LANGMAN, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce through the Federal Reserve system, certain signs, signals and sounds, namely, a wire transfer of approximately $135,956, which funds were the proceeds of a mortgage loan made by Sebring Capital Partners for the purchase of 2493 Bird Lane, Batavia, Illinois.

7. The Government's position is that the following conduct was part of the offenses of conviction and shall be included in defendant's sentence under the Sentencing Guidelines:

Between June of 2005 and October of 2006, defendant as a part of the offenses of conviction, defrauded lenders and obtained money and property from lenders by means of materially false and fraudulent pretenses, representations and promises, and material omissions. This scheme included fraudulently obtaining an additional $5 million in fraudulent mortgage loans from lenders by making materially false representations and material omissions on loan applications and supporting documentation, false statements regarding the borrowers' employment, income, financial condition, assets, contribution to the purchase price, and the intention to occupy the

property purchased. These false statements and material omissions were made in connection with properties located at:

>18 W. Chestnut Street, Unit 1S, Chicago, Illinois;
>18 W. Chestnut Street, Unit 2N, Chicago, Illinois;
>18 W. Chestnut Street, Unit 2S, Chicago, Illinois;
>18 W. Chestnut Street, Unit 4N, Chicago, Illinois;
>18 W. Chestnut Street, Unit 1G, Chicago, Illinois;
>18 W. Chestnut Street, Unit 1N, Chicago, Illinois;
>18 W. Chestnut Street, Unit 3S, Chicago, Illinois;
>18 W. Chestnut Street, Unit 3N, Chicago, Illinois;
>18 W. Chestnut Street, Unit 4S, Chicago, Illinois;
>267 W. North Avenue, Elmhurst, Illinois;
>271 W. North Avenue, Elmhurst, Illinois, and
>3023 N. Kenmore Avenue, Units 1, 2, and 3, Chicago, Illinois.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carries the following statutory penalties:

  a. Count Two and Count Three each carry a maximum sentence of 20 years' imprisonment. Count Two and Count Three also each carry a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years on each charge to which he has pled guilty.

    b. Defendant further understands that the Court must order restitution to the victims of the offenses in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

    d. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 40 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000 or twice the gross gain or gross loss, a term of supervised release, and a total assessment of $200.

## Sentencing Guidelines Calculations

  9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

  10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

  a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2013 Guidelines Manual.

  b. **Offense Level Calculations.**

    i. The base offense level is 7, pursuant to Guideline § 2B1.1(a).

    ii. It is the government's position that actual loss for which defendant is responsible resulting from the offense of conviction and the relevant conduct is approximately $7,000,000. The defendant understands that this loss amount could increase or decrease as additional information is obtained concerning the value of the collateral that secured the fraudulently obtained mortgage loans. The defendant reserves the right to contest the government's position on loss, and to argue for a lower loss amount. If the Court adopts the government's position on loss, pursuant to Guideline § 2B1.1(b)(1)(J), the offense level is increased by at least 18.

    iii. The offense involved sophisticated means, including multiple documents containing multiple false statements concerning borrower credit qualifications, including employment, income and bank accounts, and

the borrower's intention to occupy the property, among other sophisticated means. Therefore, pursuant to Guideline § 2B1.1(b)(10)(C), the offense level is increased by 2.

    iv. It is the government's position that defendant was an organizer or leader of criminal activity that involved five or more participants including at least 7 strawbuyers, an individual he used to recruit strawbuyers, and was otherwise extensive. Therefore, pursuant to Guideline § 3B1.1(a), the offense level is increased by 4. Defendant disagrees that this Guideline enhancement applies.

    v. If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

  c. **Criminal History Category.** With regard to determining

defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is at least 29, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. The defendant does not agree with the Government's Guideline calculation, and believes that the Guideline range is lower.

      e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly,

the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties,

defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss Count One,

and the forfeiture allegation in the superseding indictment.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11CR153.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

  a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a

public and speedy trial.

    i.  The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's

guilt beyond a reasonable doubt.

        v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate

16

rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22.  For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

23.  Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

24.  Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25.  Defendant understands that his compliance with each part of this

Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 12/3/13

_____
ZACHARY T. FARDON
United States Attorney

_____
VINCENT LANGMAN
Defendant

_____
MATTHEW S. EBERT
Assistant U.S. Attorney

_____
STEVEN GREENBERG
Attorney for Defendant

_____
PATRICK J. KING, JR.
Assistant U.S. Attorney